■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY ROMANDETTE, Appellant. — Levine, J. Appeals (1) from a judgment of the County Court of Albany County (Clyne, J.), rendered March 14, 1984, upon a verdict convicting defendant of the crimes of burglary in the third degree and criminal possession of stolen property in the first degree, and (2) from a judgment of said court (Harris, J), rendered April 27, 1984, which resentenced defendant on said crimes.

During the weekend of April 15-17, 1983, the Regional Emergency Medical Organization (REMO) headquarters in the Town of Colonie, Albany County, was burglarized. Valuable video and other electronic equipment used in making and showing emergency medical training tapes were stolen. On Sunday evening, April 17, Sidney Shepard was arrested in connection with an unrelated burglary in the City of Albany and subsequently gave the police a statement implicating defendant in the REMO burglary. No arrest was made of defendant at that time. However, late in the following October, defendant, Bonnie Smith and Thomas Peterson were arrested while fleeing the scene of a larceny at a furniture store in Colonie. During a lengthy interrogation of Smith, she gave a signed written statement to the police wherein she described accompanying defendant to the REMO headquarters the previous April, waiting in the car while he entered those premises and observing him returning to the car with video equipment. Thereafter, the case against defendant arising out of the REMO break-in was presented to a Grand Jury. Smith was called as a witness, but recanted her

prior statement incriminating defendant as a product of fear and exhaustion. Defendant was nevertheless indicted for burglary in the third degree, criminal possession of stolen property in the first degree and grand larceny in the second degree. Following a jury trial, he was convicted of the burglary and possession of stolen property counts of the indictment.

There must be a reversal of defendant's conviction because of the improper use by the prosecution of Smith's prior statement to police implicating defendant in the REMO burglary. Smith was called as a witness by the prosecution. On direct examination, she testified that during the afternoon of Saturday, April 16, 1983, after keeping an eye doctor's appointment, she and defendant drove to the REMO building. Defendant told her the purpose of their stopping there was to apply for employment. Defendant went in the front door while she waited in the car. Smith further testified that some 10 or 15 minutes later, defendant returned to the car empty-handed and they drove off. At this point, the prosecution confronted Smith with her prior statement in which she had described defendant returning from the REMO premises with video equipment, telling her that he had stolen it, and later disposing of it. The witness was first asked whether the statement refreshed her recollection of the events and, when she answered in the negative, it was offered and admitted in evidence without objection under instructions by the trial court that it was received "to impeach the testimony of the witness" and "does not constitute evidence in chief".

The People are correct in contending on appeal that the introduction of Smith's statement for impeachment purposes was authorized under CPL 60.35 (1). Smith, admittedly an eyewitness to defendant's entry in the building, denied seeing him break in or bring out stolen property. Since this tended to disprove the prosecutor's position, her earlier inconsistent statement was admissible to impeach the credibility of her testimony (CPL 60.35 [1]; *People v Boodrow,* 90 AD2d 944, 945). However, in summation, the prosecutor chose to go well beyond this limited, legitimate use of the statement. After reading from it and referring extensively to its incriminating contents the District Attorney argued to the jury that "there could be no better or direct evidence" of defendant's participation in the burglary "than through the eyes of a woman who sat across from R.E.M.O.'s and watched this defendant enter R.E.M.O.'s on Saturday afternoon and come out carrying the stolen video equipment".

After defendant's objection was overruled, the prosecutor concluded his comments on Smith's testimony by characterizing the statement as "direct evidence of this defendant's participation

by an eyewitness, who tried to cover her tracks but couldn't". Although defendant's objection was inartfully phrased, it clearly apprised the trial court that a challenge was being made to the prosecution's use of the statement. Nevertheless, the court overruled the objection and, in its charge to the jury, failed to expand upon or repeat the terse instruction on the limited purpose of the statement given at the time of its admission. Thus, the jury was left with the uncorrected misimpression that Smith's prior statement could be used not only to cast doubt on the truthfulness of her exculpatory testimony at the trial, but also as affirmative proof of defendant's guilt. This was clearly impermissible (CPL 60.35 [2]; *People v Freeman,* 9 NY2d 600; *People v Carroll,* 37 AD2d 1015).

We are unimpressed with the People's argument on appeal that the foregoing use of Smith's prior inconsistent statement can be justified as a fair reply to improper remarks in defendant's summation, wherein his counsel argued in favor of the truth of Smith's exculpatory trial testimony and against the reliability of her earlier inconsistent statement. There was nothing improper in this tactic. Defendant had every right to emphasize the portion of Smith's testimony damaging to the prosecution's case. The People can hardly contend otherwise, since unless that testimony was damaging, there was no right to introduce the prior inconsistent statement. Obviously, if the defense could properly urge the truthfulness of Smith's exculpatory trial evidence, it had the concomitant right to attempt to weaken any impeaching evidence. This hardly gave the prosecution a license to argue in response that the inconsistent statement was direct evidence of guilt. Indeed, the prosecution's awareness that Smith had already once recanted her statement when she appeared before the Grand Jury and the detailed references to its contents in the People's opening statement strongly suggest that the prosecution had adopted, from the very beginning of the trial, the dubious strategy of putting Smith's statement before the jury as inculpatory evidence (*see, People v Vega,* 108 AD2d 766; *People v Jordan,* 59 AD2d 746).

Based upon our review of the record as a whole, it is impossible for us to conclude that permitting the prosecution to thus misuse Smith's statement was merely harmless, nonprejudicial error. Apart from the statement itself, the prosecution was mainly forced to rely upon the testimony of Shepard and Peterson to connect defendant with the crime. The prosecutor himself characterized Shepard as a "scoundrel" with a lengthy criminal record and Peterson as "more than a scoundrel" for the same reason. Each was actually or possibly connected with the crime

for which defendant was being tried and was testifying under a grant of immunity from prosecution for that crime and others. Under these circumstances, we cannot assume that the jury would have arrived at the same guilty verdict if it had not been invited to consider Smith's statement as direct evidence of defendant's participation in the crime. This alone requires reversal, without further consideration of defendant's remaining assignments of error.

Judgments reversed, on the law, and matter remitted to the County Court of Albany County for a new trial. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.